Henry L. Ughetta, J.
In connection with the submission of an order confirming the findings of a jury and appointing a committee of an alleged incompetent person the question is presented as to whether, under the facts and circumstances, certain of the relatives of the alleged incompetent have an absolute right to nominate the persons who shall be appointed committee. Counsel for petitioner insists that this court is required to designate the persons so nominated and submits citations of authority which he contends sustain this view.
The alleged incompetent is a man 38 years of age, and it appears that he has been mentally defective from early childhood. Since February, 1922 he has been a patient in a mental institution.
His mother died intestate on March 21 of this year, and prior to that time he had no property of his own and the only assets of his estate consist of property which he will receive as her sole distributee. Her estate is a large one, consisting of real property assessed at $10,000, cash in various banks totaling $110,375, and securities having a value of $149,435.07. It is estimated that after allowing for expenses of administration, debts and estate taxes, her net estate will amount to about $181,479.33 in personal property and the parcel of real property.
The closest living relative and sole distributee of the alleged incompetent is an aunt, Elizabeth J. Pfleghar (Sister Emmerentia), who, it is stated, is 82 years of age, in feeble health, suffering from a heart ailment, “ and is therefore unable to participate in these proceedings or to be consulted in respect thereto.” His other relatives consist of three cousins, residents of the State of Connecticut, one of whom, Pauline J. Vorschmitt, is the petitioner herein. The petition prays that Guaranty Trust Company, one Guy C. Heater, an attorney, and petitioner be jointly appointed committee of the person and *246 property of the alleged incompetent. This petition is consented to and approved by petitioner’s sisters, the other two cousins, but not, presumably for the reasons above mentioned, by his aunt.
From the earliest times, the rights of the relatives of incompetents to act as or participate in the selection of the committee have been the subject of much discussion and comment by the courts. It was the ancient rule that heirs and next of kin were to be looked upon with suspicion, since their interests were presumably adverse to those of the incompetent. However, in 1724 this theory was criticized, and in Dormer’s case (2 P. Wms. 262) an uncle of the lunatic was appointed. In 1815, in one of the early New York cases, Chancellor Kent in appointing a daughter committee of her mother stated: “ I agree with what was said by Lord Macclesfield, in Dormer’s case (2 P. Wms. 262) that there is no sufficient reason for the old rule against committing the custody of the person and estate of a lunatic to the heir at law.” (Matter of Livingston, 1 Johns. Ch. 436.) There follows a long line of cases where, with increasing frequency, heirs and relatives were appointed, though the courts frequently remarked that it was not a matter of course to appoint those who are presumptively entitled to the estate upon the incompetent’s death, but that they might under certain circumstances be regarded as the proper persons to whom to commit the custody of the estate. (See Matter of Taylor, 9 Paige Ch. 611; Matter of Owens, 5 Daly 288.) The courts were further careful to point out that it was always the best interests of the incompetent that governed. Thus, in Matter of Page (7 Daly 155, 160) the Chief Justice stated: “ The rule is not that relatives are to be preferred to strangers, nor strangers to relatives, but that the court in the particular case is to do that which is best for the lunatic, keeping in view the possibility of recovery.” The principle was again stated by the General Term in Matter of Cook (53 Hun 634, opinion in 6 N. Y. S. 720, 721) the court reaffirming “ the long-established rule that the interests of the heirs and next of kin must, in such a proceeding, be wholly secondary to the interests of the lunatic, both with respect to her person and estate.”
In 1860 the Dutchess General Term in Matter of Lamoree (32 Barb. 122) held that under the facts there presented an order appointing a stranger where the next of kin did not assent or unite in the petition had been improvidently granted and that the matter should be remitted for the purpose of permitting petitioner to renew her application for the appointment of the committee. The opinion of Judge Brown in this ease sets forth *247 the priniciples which form the foundation for the modern practice of our courts in the selection of persons to act as committees as follows (pp. 124-125):
“If the next of kin unite in a petition and name a proper person as committee, or give their consent in writing to the appointment of a particular person, it is usual to select such person. * ® *
“ Considering the close and intimate relations which the committee must maintain with the family and relatives of the lunatic, his power of control — all hut absolute — over his person and property, the remote possibility of his ever being in a condition to make any disposition of his estate which shall prevent its descent and transmission to the heirs at law and next of kin, a rule of practice or of positive legislation which would justify the appointment of a stranger to execute the trust of committee, without the assent and against the will of his family or other relatives, and without any sufficient or adequate cause, would be oppressive and intolerable.”
This holding has been followed on numerous occasions by the courts of this State, but almost invariably with observations to the effect that it is subject to and limited by the principle that the best interests of the incompetent are paramount. Indeed, the proper interpretation of the opinion is that the principles set forth are founded on the theory that in the absence of valid objections the interests of the incompetent will be best served by appointing a nominee of the next of kin. Thus in Matter of Williams (252 App. Div. 314, 315) after citing the Lamoree case, the court commented that “ The welfare of an incompetent is a matter of public concern, and should be given most careful consideration. As a general rule, those nearest to such a one are deeply concerned of his comfort and care, and their counsel and advice should not be ignored or overlooked.” In reversing an order appointing an attorney selected by the court over the wishes of all of the relatives of the incompetent, it was pointed out that the persons nominated by the next of kin were fully qualified, had no adverse interest, and that no valid objection existed to their appointment. The Court of Appeals in Matter of Rothman (263 N. Y. 31) while citing and quoting the Lamoree case with approval, nonetheless sustained the lower court in its selection of a stranger on the ground that it had been justified in finding that the members of the incompetent’s family had an adverse interest and that their nominee should not have been appointed — thus holding that the interests of the incompetent take precedence over the wishes and desires of his relatives.
*248 The remaining two cases relied on by petitioner are distinguishable on the facts from the proceeding now before the court. In Matter of Dietz (247 App. Div. 366, 367) it appeared that the Special Term “ without stating any reason, and unsupported by anything in the record ” disregarded the wishes of the incompetent’s son and of all the adult members of the family as well as of the representative of the infants and of the alleged incompetent herself and named a person of its own choice as an additional member of the committee. An examination of the record and briefs in this case show that the administration of the estate there was involved, entailing among other things, the management of a large business (R. E. Dietz Company) of which the nominees of the next of kin were officers and directors- — -factors not present in the case at bar where the estate consists entirely of cash and securities and one small piece of real property. It further appeared and was argued that the appointment of an additional member of the committee who would be entitled to full commissions constituted an unjustifiable waste of the assets of the estate. On these facts, the Appellate Division found the “ arbitrary appointment of one selected by the court” to be “improvident in the circumstances.” In Matter of Foster (230 App. Div. 730, affd. 254 N. Y. 614) the Special Term had ignored the wishes of the sole next of kin that a trust company be appointed committee and designated an individual stranger, with a surety company bond of $35,000. The record there discloses that the bank, the appointment of which had been requested, had been acting as agent for the incompetent in the management and care of her property, had possession of most of her securities and was familiar with her affairs. It further appears that her income was no more than reasonably sufficient for her support, and that it was sought to save expense by appointing a corporate committee. On appeal it was held that sound discretion dictated the appointment of the bank ‘1 in the interests of economy and the substantial ends of justice.”
Under the circumstances of the proceeding now before me, I do not apprehend that there is anything in the cases cited requiring a literal and blind compliance with the request of the cousins of the alleged incompetent that a trust company and two named individuals be appointed joint committee of the person and property. In my opinion the interests of the alleged incompetent will not be best served by such procedure; on the contrary, the estate will be subjected to needless expense in the form of bond premiums and triple commissions to which a committee of three will be entitled in an estate of this size, not *249 alone in connection with the incompetency proceeding itself, but also in the Surrogate’s Court; for it may be presumed that letters of administration on the mother’s estate will issue to the committee of the property here appointed.
Nevertheless, save for the aunt who has been unable to participate in this proceeding, the cousins are the closest relatives of the alleged incompetent and their desires should and will be regarded, so far as the same shall appear to be consistent with the interest and welfare of the alleged incompetent. It is my considered judgment that this does not extend to the appointment of a joint committee of three members. The Guaranty Trust Company of New York will accordingly be appointed committee of the property; and petitioner and the attorney selected by her will be appointed committee of the person under a bond of $1,000. In this way the desires of the relatives are recognized and the court is not selecting a stranger in disregard thereof. At the same time the estate is saved an unnecessary financial burden.
Motion to confirm verdict of the jury and for the appointment of a committee granted as indicated.