■ In the Matter of ROSANNA E. HECKL et al., Respondents-Appellants, for the Appointment of a Personal Needs and Property Management Guardian of AIDA C., an Alleged Incapacitated Person, Appellant-Respondent. PERMCLIP PRODUCTS CORP., Intervenor-Respondent. [886 NYS2d 295]—

Appeal and cross appeal from an order and judgment (one paper) of the Supreme Court, Erie County (Penny M. Wolfgang, J.), entered October 1, 2008 in a proceeding pursuant to Mental Hygiene Law article 81. The order and judgment, inter alia, appointed guardians of the person and property of the alleged incapacitated person.

It is hereby ordered that the order and judgment so appealed from is unanimously modified on the law by vacating that part appointing Daniel Walsh coguardian of the person of Aida C. and as modified the order and judgment is affirmed without costs.

Memorandum: The alleged incapacitated person, Aida C. (hereafter, IP) appeals and petitioners cross-appeal from an order and judgment appointing the IP's personal assistant and granddaughter as coguardians of the IP's person and the corporate counsel of intervenor-respondent, Permclip Products Corp. (Permclip), as guardian of the IP's property in this proceeding pursuant to Mental Hygiene Law article 81. As we noted in a prior decision concerning this proceeding, the IP is the mother of petitioners, as well as the president and sole shareholder of Permclip (*Matter of Aida C.*, 44 AD3d 110, 112 [2007]). In an amended petition, petitioners removed themselves from consideration as guardians of the IP's property and, dur-

ing the pendency of this proceeding, they proposed that the IP's granddaughter, rather than any of the petitioners, be named guardian of the IP's person inasmuch as petitioners and the IP have been estranged since 2005.

Contrary to the contention of the IP on her appeal, Supreme Court properly denied her motion to dismiss the amended petition and determined that she is incapacitated and requires a guardian to provide for her personal needs as well as a guardian to manage her property (*see* Mental Hygiene Law § 81.15 [b], [c]). We reject the further contention of the IP that the court erred in appointing her granddaughter as a coguardian of her person. We conclude with respect to petitioners' cross appeal, however, that the court erred in appointing the IP's personal assistant as a coguardian of the IP's person, and we therefore modify the order and judgment accordingly.

Pursuant to Mental Hygiene Law § 81.19 (d), in appointing a guardian the court should consider, inter alia, the social relationship between the IP and the proposed guardian (§ 81.19 [d] [2]); the care provided to the IP at the time of the proceeding (§ 81.19 [d] [3]); the educational and other relevant experience of the proposed guardian (§ 81.19 [d] [5]); the unique requirements of the IP (§ 81.19 [d] [7]); and the existence of any conflicts of interest between the IP and the proposed guardian (§ 81.19 [d] [8]). With respect to the IP's granddaughter, the record establishes that, although the IP mistakenly believes that she does not have grandchildren, the IP and her granddaughter had shared a very close and loving relationship. Although the IP was not aware that she was related to her granddaughter, she enjoyed an evening with her granddaughter and other family members at a restaurant, and the IP invited her granddaughter to visit her at her home. In addition, the record establishes that the IP's granddaughter has experience in caring for two elderly women and has taken a training course with respect to the duties and responsibilities of a guardian of the person. The IP's granddaughter testified at the hearing on the amended petition that she is willing to work with the IP's personal assistant and recognizes her grandmother's dependence upon him. We thus conclude that there is no basis upon which to disturb the court's appointment of the IP's granddaughter as coguardian of the IP's person (*see Matter of Anonymous*, 41 AD3d 346 [2007]).

As noted, however, we agree with petitioners that the court erred in appointing the IP's personal assistant as coguardian of the IP's person, inasmuch as there is a conflict of interest that prevents him from serving in that capacity (*see* Mental Hygiene

Law § 81.19 [d] [8]). The personal assistant testified that he has worked for the IP for 34 years and has never received a paycheck. He further testified that he resides in the IP's home; the IP provides for his personal needs; and he has limited assets and is dependent upon the IP for his food, clothing and shelter. Furthermore, he testified that he does "pretty much" whatever the IP tells him to do. By way of example, he admitted that he summoned the police at the direction of the IP when her grandchildren came to visit and that, although the police handcuffed the IP's grandson, the personal assistant did not advise the police that the alleged intruders were the IP's grandchildren and that the IP had, the previous evening, invited her grandchildren to visit her. It is undisputed that the personal assistant is the trusted and constant companion of the IP and maintains her home in an "immaculate" condition. Nevertheless, we conclude that he is disqualified to serve as coguardian of the IP's person based upon a conflict of interest, inasmuch as he is dependent upon the IP to meet his basic needs and he does not exercise independent judgment, but rather simply does what the IP instructs him to do.

We reject the further contention of petitioners on their cross appeal that the court erred in appointing Permclip's corporate counsel as guardian of the IP's property. It is well established that it is within the discretion of the court to appoint a guardian (see Matter of Wynn, 11 AD3d 1014, 1015 [2004], lv denied 4 NY3d 703 [2005]). Here, the record establishes that Permclip's corporate counsel had worked for Permclip for a few years, and that he arranged to secure in excess of $2 million that had been left in various unsecured places in the IP's home. Inasmuch as petitioners in the amended petition deferred to their mother's wishes and no longer sought to be named guardians to manage the IP's property, we perceive no reason to disturb the exercise of the court's discretion in appointing Permclip's corporate counsel as guardian with respect to the IP's property (cf. Matter of Chase, 264 AD2d 330, 331 [1999]).

We reject the contention of the IP that the court violated her due process rights by requiring her to testify at the hearing. Although the Mental Hygiene Law is silent on the issue whether the person alleged to be incapacitated (AIP) may be compelled to testify, we note that Mental Hygiene Law § 81.11 (c) requires the presence of the AIP at the hearing "so as to permit the court to obtain its own impression of the person's capacity." In addition, we note that we previously rejected the contention of the IP that her Fifth Amendment rights against self-incrimination are implicated in an article 81 proceeding (see Aida C., 44 AD3d at 115; cf. Matter of A.G., 6 Misc 3d 447, 452-

453 [2004]). We likewise conclude that her due process rights are not violated inasmuch as the court is charged with determining her best interests (*see generally Wynn*, 11 AD3d at 1015). We have reviewed the remaining contentions of the parties and conclude that they are without merit. Present—Scudder, P.J., Hurlbutt, Peradotto, Green and Gorski, JJ.